We are coming to the very last case of the day, and that is Isunza v. Lynch. Good morning, Ms. Panteva, but only for a minute. Thank you. Good morning, Your Honors. May it please the Court, my name is Iskra Panteva, and I represent Sir Julius Isunza in front of this Court. Today I want to talk to you about his claim for cancellation of removal. He has been in dispute has been whether or not he has resided continuously for seven years after being admitted in any status. We urge this Court to rule that he has been admitted in any status in 1978, and he has acquired a new period of residency after he was readmitted in 2000. The facts of the case are that Sergio is a 54-year-old citizen of Mexico who came to this country in 1978 in order for him to join his parents. He adjusted his status in 1994, and he was... Let me just stop you there. He never had legal status, right? When he came in 1978, did he obtain legal status, or was he undocumented? He was undocumented. His family was documented. He applied for adjustment of status in the 80s when he was married with his first wife, but he never completed. He received employment authorization. He never completed his adjustment of status application. I just want to be clear on that. Thank you. He eventually obtained legal permanent residency status in 1994, and he was arrested in 1998, four years later. It was for possession of controlled substance, and eventually he was given probation of 7, 10, 14, 10 probation, which is under Illinois law. It's not considered conviction. As soon as he went on with his life after that, without any change in his legal permanent residency status, he received his residency card. USCIS actually reissued his residency card, as well as he went on vacation several times to Mexico in 2000 and 2001. The last time, 2011, when he was detained at the border, and several months later, a notice to appear has been issued. In this case, the issue is whether or not step-time rule actually will prevent him from accumulating another period of continuous residence after his reentry in 2000. Our contention is that BIA interpreted this to mean that any period will terminate forever once a triggering event has occurred. Here, the triggering event is issuing a notice to appear or an arrest, underlining at this point, at this time, this is possession of controlled substance. We believe that BIA has constructed this statute against its plain language, against the purpose of the statute, and has been inconsistent with their decisions. So your view would be the clock starts running again when he comes back in and is waived in? Yes. Why would that make sense if someone who stayed in the United States had been arrested but then didn't choose to go on vacation and come back? Their clock would have stopped, right? If we look at the purpose of the statute, in 1996, the Congress enacted it in order for several things to happen. They decided that there was a lot of cases when the immigrants will come here. They will use a lot of different procedural devices in order to extend their status. And when they do that, they kind of become eligible for cancellation of removal. They decided that that should be stopped, and that's why they enacted the stop time rule. In this case, this purpose will not be served, because Sergio was never on notice that actually a removal proceeding can ever be started against him. He was never aware, for 13 years actually, that the government can pursue him and take his legal permanent residency card. And basically, our argument here is that the purpose of the statute has been defeated by the interpretation of the BIA. BIA has decided that this will, with the stop triggering event, will actually stop the accumulation of time forever. That means that the government can break action in 20, 30, 40, 50 years, and actually that has a lot of consequences. It means that the government, in a way, BIA is incentivizing the government to delay those proceedings or not to pursue those proceedings with reasonable diligence. The other problem is that our client is looking for evidence that have been 30 years old, 40 years old. He has entered in 78, which is 36 years ago. And some of those evidence no longer exist. The other thing is long dormant removal actions are more cruel than just in a lot of circumstances. And this policy and this purpose of the statute has been understood by BIA when they have interpreted several cases. For example, this is a recent BIA decision from 2015. They've decided that even if no dystopia has been issued, they are not going to consider it as a triggering event because a commencement of removal proceeding has not been stopped. So what has happened before is, and it has been in recent years, ICE will issue a notice to appear, but they will never enact, they're never going to put that on the docket, this notice to appear. So it will go forever, and then they are saying that, oh, because the notice to appear has been issued, that means that they will never be, the triggering event has happened. Basically, there is no way for the immigrants in this case to delay their proceedings because there is no proceedings. And the same thing has happened with Sergio's case. There is no way for him to delay his proceedings because he didn't even know that those proceedings existed. Do you agree, just on the jurisdictional point, do you agree that the only thing before us is the denial of the motion to reconsider, and it's not, we don't have jurisdiction over the October 2014 decision? Yeah, of course. So it has to, and then to have jurisdiction to make any decision about the BIA's decision to deny reconsideration, your position is that there was a legal or constitutional error in denying the reconsideration? Our position is that there was abuse of discretion when they denied the motion to reconsider. Say it again, I'm sorry. Your position is? That when they denied the motion to reconsider, they abused their discretion, basically. And if it were a discretionary judgment on the part of the BIA to deny reconsideration, is there jurisdiction in the Court of Appeals over that kind of decision? No, there won't be, but this is not discretionary. We are talking about statutory, whether or not the client is statutorily eligible for cancellation of removal. So he was never had the opportunity to have an evidentiary hearing. So there was no discretionary determination in this case. If there is no further questions. Ms. Watson. May it please the Court, Your Honors. I'm Joanna Watson on behalf of respondent, the United States Attorney General. And this case really does come down to, it comes down to the court's jurisdiction because of the controlled substance violation, limits the court's jurisdiction to legal and constitutional claims, on top of the fact that this is a motion for reconsideration, which looks to whether, normally you would look to a factual or legal error in the prior decision, but because he was a, has the drug offense, we only look to legal or constitutional claims. Is there no check on the government's conduct in a case like this, in which the government waits an inordinate amount of time before seeking removal, allowing, you know, a petitioner to establish deep family roots, family connections? Wouldn't the interpretation advocated by the court in Okeke encourage the government to proceed in a timely manner with such actions? This is a very, very difficult and sad situation. I agree. I mean, the circumstances in this case, I mean, it's extremely unfortunate. But unfortunately, the law is what the law is, and there is no statute of limitations of the government bringing removal proceedings of somebody. The fact that a conviction doesn't catch up to them until much later, unfortunately, they still have the authority to bring the notice to appear. Is there any avenue of prosecutorial discretion or other relief that would still be available here? PD is, I mean, they had applied for it, and it was denied. It went through a whole process, and unfortunately, there were other convictions that came up in that process that hadn't been relayed, and it wasn't an option. I mean, I full force presented, you know, the case to DHS. I tried my best, but, you know, again, the facts are what the facts are in this particular case, and it's incredibly unfortunate. But it is what it is and comes down to, you know, did the board make an error in not relying on Okeke and finding that it seems it hasn't had an accrued physical presence. So Okeke's already pursued a prosecutorial discretion type of? Oh, I have no idea about Okeke. No, no. Oh, yes, yes, yes. Mr. Aizuna has already numerous times. It's gone through numerous times, and unfortunately, they've declined. And at this point, there is no other option with that. So, I mean, it is incredibly unfortunate, but, you know, it all comes down to jurisdictional issue. This admitted in any status argument was never presented to the agency in the first instance. So to try to get that to come in on a motion to reconsider, it's just you can't do that. There's case law within this circuit. The regulations say that, you know, a motion to reconsider is not an opportunity to present an argument that could have been presented before. So, and it goes to the board's discretion when it says that, you know, you can't do this under our regulations. You can't have this new evidence. And as I stated in the brief, like, even if the court somehow saw an opportunity to look at it, I mean, there was no, I mean, it wasn't presented. And then the definition of admission anyways doesn't include somebody who is being coming back as an LPR. It specifically says it does not include that. Unless they have one of these convictions. Isn't there an unless in there? There are unless, but none that are applicable in this case. None for this conviction. But besides the fact that that argument wasn't presented in the first instance, and we're back to a motion to reconsider. So, on a final note, you know, the board, even the Third Circuit has said that that Okeke case is limited to the facts of that case. I mean, it just doesn't apply in this. And the board did not commit a legal error when it determined that the stop time rule, you know, he came in in 1994 as an LPR. And when that conviction in 1998 was the stop, stop the accrual, the continuous physical presence. And he's unfortunately not eligible for cancellation or removal. And then again, getting past the jurisdictional issues. So, if there are no more questions, I'll follow up with that we asked that the court dismiss the petition for review for lack of jurisdiction or in the internal. Uphold the board's decision. Thank you. Just two comments. In terms of reentry, the issue of reentry in 2000, this has been raised numerous times. It has been raised at the immigration judge level. It has been raised at the BIA level. It has been raised at the motion to reconsider. And we have tried to exhaust that issue on all different levels. So, I think that the court has jurisdiction to decide on this case, on that particular issue. And the second thing that I just want to make sure that we cover, the immigration, the Board of Immigration Appeals have not been very consistent with their decisions. They have considered a reentry, illegal reentry, as a new period of continuous residence. And that was, I believe, a matter of Cisneros Gonzalez. So, the Kiki case is not the only case that is out there where they say that where the court and the BIA has said that a new period of continuous residence is allowed. Thank you. If there is no further questions, I'll rest. Thank you. Thank you. Thank you to both of you. And the case will be taken under advisement. And we will be in recess until tomorrow morning at 9.